# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JERRY ALLISON ) | |
| ) | Case No. 1:16-cv-874 |
| Plaintiff, ) | |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| WASHINGTON METROPOLITAN ) | |
| AREA TRANSIT AUTHORITY ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Jerry Allison, by and through his undersigned counsel, hereby complains of Defendant Washington Metropolitan Area Transit Authority ("WMATA"), as follows:

## VENUE AND JURISDICTION

1. This Court maintains jurisdiction over this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

2. This action properly lies in the United States District Court for the District of Columbia, Columbia to 42 U.S.C. § 2000e, *et seq.*

3. This court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Plaintiff filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") and originally brought this action within ninety (90) days of the receipt of a Dismissal and Notice of Rights, issued by the EEOC on March 28, 2016.

5. Venue is proper in D.C. because Defendant formerly employed Plaintiff in D.C.

## PARTIES

6. Plaintiff, **JERRY ALLISON**, was at all time relevant herein, a domiciliary of the State of Maryland residing in Prince George's County.

7. At all times relevant herein, Plaintiff has been an "employee" within the meaning of 42 U.S.C. § 2000e(f).

8. Upon information and belief, Defendant **WMATA** is a governmental body created by an interstate compact creating a tri-jurisdictional operation in the District of Columbia, the State of Maryland, and the Commonwealth of Virginia. At all relevant times, WMATA has continuously been doing business in the District of Columbia and the Washington, D.C. metropolitan area.

9. At all times relevant herein, WMATA, has been an "employer" within the meaning of 42 U.S.C. § 2000e(b).

10. At all times relevant herein, WMATA employed more than fifteen (15) employees.

## STATEMENT OF FACTS

11. Plaintiff, an African American male, commenced his employment with WMATA in January 2012. He is currently employed as, Supervisor – Warehouse/Storage.

12. Plaintiff performed his job duties successfully for the entire time he worked at WMATA and had been commended for his strong interpersonal skills and for being a team player. Between January 2012 and May 2014, he was often appointed Acting Manager, Warehouse and Logistics, when the Manager, Gerald Verno, was absent.

*Failure to promote*

13. In or around May 2014, Mr. Verno resigned, and Vyron Johnson (African-American), former Director of Materials and Logistics, appointed Plaintiff as the Acting Manager,

Warehouse and Logistics until a new Manager could be formally hired.

14. On June 8, 2014, Plaintiff applied for the Manager, Warehouse and Logistics job opening (requisition number #140512).

15. On June 9, 2014, the job opening closed to external candidates.

16. On June 15, 2014, the job opening closed to internal candidates.

17. WMATA received a total of 79 applications for the job opening.

18. Plaintiff was highly qualified for the position due to his experience as a supervisor, his intermittent experience as Acting Manager since January 2012, and because he had performed all of the duties for the position as the interim Acting Manager since May 2014.

19. The Hiring Manager, Mr. Johnson, selected Plaintiff and three other internal candidates to be interviewed for the job opening.

20. On July 22, 2014, Plaintiff interviewed for the position before a three-person panel: Mr. Johnson; Raphael Alfred (African-American), Director of Technology and Business Operations; and Tara Wasiak (Caucasian), Purchasing, Supply Chain Manager.

21. Shortly after Plaintiff's interview, Mr. Johnson informed Plaintiff that he had scored the highest out of all of the candidates (average interview score of 3.00 out of 5.00) and that Plaintiff had been recommended to fill the job opening.

22. During the same time period, Mr. Alfred advised Plaintiff that he also recommended Plaintiff for the position and he had signed off on the selection paperwork.

23. On or about July 29, 2014, Mr. Johnson signed a letter memorializing the committee's formal recommendation and selection of Plaintiff for the position of Manager, Warehouse and Logistics.

24. Mr. Johnson retired on July 30, 2014 – before the process of hiring Plaintiff was formally

completed.

25. On August 3, 2014, Ms. Wasiak replaced Mr. Johnson as the new Director of Materials and Logistics.

26. On or around August 20, 2014, Plaintiff had not heard anything regarding his selection so he asked Ms. Wasiak for a status update regarding the manager position that Mr. Johnson had informed him he had been selected for.

27. Ms. Wasiak informed Plaintiff that she was unimpressed with the internal candidates and unilaterally decided to reopen the selection process and extend interviews for the position to three external candidates.

28. Because Plaintiff had already been selected, if Defendant wanted to retract its selection of Plaintiff and reopen the application process, the job opening should have been reposted.

29. On August 24, 2014, over two months after the initial job opening closed to external candidates, Timothy St. John (Caucasian) was interviewed.

30. Mr. St. John received only a slightly higher average interview score (3.37 out of 5.00) than Plaintiff.

31. Mr. St. John's interview was only before two interviewers, Mr. Alfred and Ms. Wasiak, instead of the three interviewers that Plaintiff faced. Three interviewers is normal practice at WMATA and upon information and belief, no other candidate for any other position has had only two interviewers.

32. On or about September 14, 2014, Plaintiff was subjected to a second interview before Mr. Alfred and Ms. Wasiak.

33. On or about November 12, 2014, Plaintiff learned that Mr. St. John had been selected for the position.

34. Mr. St. John was less qualified because: (1) Plaintiff was undisputedly more familiar with the work required of the position, because he had been completing those tasks for approximately six months as the Acting Manager, (2) has less managerial experience than Plaintiff, and (3) has less transit experience than Plaintiff.

35. The sole reason proffered in support of Mr. St. John's allegedly superior qualifications is that he gave a better interview.

*Unlawful retaliation for filing an EEOC charge*

36. On or about November 24, 2014, Plaintiff filed a Charge of Discrimination with the EEOC alleging race discrimination based on the flawed hiring practices that resulted in Mr. St. John being selected for the position over Plaintiff, who was better qualified.

37. On information and belief Mr. St. John had knowledge of Plaintiff's protected activity no later than February 25, 2015, because Plaintiff directly told Mr. St. John, who responded that he was already aware of Plaintiff's charge at EEOC regarding Plaintiff's discriminatory nonselection.

38. Mr. St. John, now Plaintiff's direct supervisor, has subjected Plaintiff to heightened scrutiny and disparate treatment. Mr. St. John routinely assigns Plaintiff undesirable work assignments and additional work, while other similarly-situated storeroom supervisors are not subject to this treatment.

39. Mr. St. John has assigned tasks to Plaintiff that are outside Plaintiff's job description or area of control, such as making Plaintiff responsible for tracking inventory items across work orders. It is not Plaintiff's job to ensure that the maintenance employees are ordering inventory items from the storeroom properly.

40. Mr. St. John has also assigned Plaintiff the responsibility for maintaining the accuracy of

multiple "Rehab Sheets," large spreadsheets that track inventory for a particular storeroom. Mr. St. John has assigned Plaintiff the "Rehab Sheet" for a storeroom that a different supervisor is responsible for. This requires a significant investment of time for work that is not Plaintiff's responsibility. Mr. St. John does not accommodate this additional workload, even though Plaintiff should only be responsible for ensuring the accuracy of the inventory under his control.

41. On or about March 25, 2015, Defendant submitted its Position Statement to EEOC in connection with the investigation of Plaintiff's charge of nonselection because of race discrimination.

42. Shortly before Defendant submitted its Position Statement, Mr. St. John indicated to Plaintiff that Plaintiff was going to be assigned a massive amount of extra work, the Mid Life Overhaul Program. This additional responsibility was in retaliation for Plaintiff's protected activity.

43. Defendant's conduct evidences an invidious retaliatory agenda because shortly after receipt of Plaintiff's initial charge of discrimination with the EEOC, Plaintiff was subjected to heightened scrutiny and assigned a disproportionate and undesirable workload.

44. Mr. St. John's heightened scrutiny of Plaintiff has continued in full force. On February 22, 2016, Mr. St. John issued a poor annual performance evaluation to Plaintiff.

45. Plaintiff's February 2016 performance evaluation does not accurately reflect his performance during 2015 because Mr. St. John unreasonably and negatively evaluated Plaintiff on items that were not Plaintiff's responsibility or outside of his control, and because Plaintiff's performance was better than evaluated.

46. On March 16, 2016, Plaintiff was placed on a Performance Improvement Plan ("PIP") to be

completed by May 20, 2016. Even though Plaintiff was performing adequately prior to being placed on the PIP, Mr. St. John assigned an unreasonable PIP to Plaintiff in retaliation for engaging in protected EEO activity.

47. Defendant's unlawful conduct was willful, malicious, wanton, and reckless.

48. Plaintiff sustained damages as a result of the unlawful conduct of Defendant.

## COUNT 1
(Title VII – 42 U.S.C. § 2000e-2 – Discrimination on the basis of race)

49. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

50. Title VII prohibits employers, including Defendant, from making employment decisions because of an applicant's race.

51. By and through its conduct, Defendant violated Title VII by revoking Plaintiff's selection as the Manager of the Warehouse and Logistics in order to select an external Caucasian candidate who was subjected to a different, less strenuous application and interview process.

52. Defendant's actions were intentional, reckless, and were taken with malice.

53. As a result, Plaintiff has incurred damages consisting of lost wages plus benefits, and punitive damages.

## COUNT 2
(Title VII – 42 U.S.C. § 2000e-3 – Retaliation for engaging in protected activity)

54. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

55. Title VII prohibits employers, including Defendant from discriminating against an employee because he has made a charge of an unlawful employment practice under Title VII.

56. By and through its conduct, Defendant violated Title VII by, (1) issuing Plaintiff poor performance reviews, which inaccurately reflect his performance, and (2) assigning Plaintiff undesirable work and an unreasonable work load, in retaliation for his charge of

discrimination filed with the EEOC.

57. Defendant's actions were intentional, reckless, and were taken with malice.

58. As a result, Plaintiff has incurred damages consisting of punitive damages.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all Counts contained in the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant on each Count in the amount of $300,000, or such other amount as is determined by the jury, for lost wages, front pay, and benefits; compensatory damages for pain and suffering, mental anguish, and emotional distress; and punitive damages; interest; costs; the amount of tax on any award; reasonable attorney's fees; and any such other relief as the Court deems fair and just.

Date:  May 9, 2016                                   Respectfully submitted,

 

Alan Lescht & Associates, P.C.

By:   /s/
Alan Lescht (#441691)
1050 17th St., NW, Suite 400
Washington, D.C. 20036
Tel:  (202) 463-6036
Fax:  (202) 463-6067
alan.lescht@leschtlaw.com
*Attorney for Plaintiff*