# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JERRY ALLISON**,<br><br>                Plaintiff,<br><br>        v.<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**<br><br>                Defendant. | Case No. 16-cv-00874 (TNM) |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment. Upon consideration of the entire record in this case, and in light of my obligation to draw "all justifiable inferences" in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), I conclude that at least two disputed issues of material fact preclude summary judgment.

## I. BACKGROUND

Plaintiff Jerry Allison, an African-American man, alleges that Defendant Washington Metropolitan Area Transit Authority (WMATA) failed to promote him to Warehouse Manager because of his race, thus violating Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2. He further contends that after he filed discrimination complaints, WMATA retaliated by burdening him with unfair responsibilities, placing him on a Performance Improvement Plan, giving him poor performance evaluations, and ultimately terminating his employment, in violation of 42 U.S.C. § 2000e-3. Second Am. Compl. 7-8. Following discovery, WMATA filed a Motion for Summary Judgment.

1

## II. LEGAL STANDARDS

"Title VII of the Civil Rights Act makes it unlawful for an employer to 'fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)(1)). The statute thus establishes two elements for an employment discrimination claim: "(i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Id.* Under the second element, a plaintiff need only show "that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013).

A motion for summary judgment will only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, "[c]redibility determinations, [and] the weighing of the evidence" are not a judge's role. *Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*; *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.") (citing Fed. R. Civ. P. 56(c)). "[A] finding of actual intent to discriminate on racial grounds" is "a pure question of fact." *Pullman-Standard v. Swint*, 456 U.S. 273, 289 (1982). "Where . . . the record contains no direct evidence that the adverse employment action of which the plaintiff complains was caused by prohibited discrimination, we turn to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802–05 (1973), to analyze the claim." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). However,

> [W]here an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment . . . the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

*Brady*, 520 F.3d at 494 (D.C. Cir. 2008) (emphasis in the original). "[A]n added measure of "rigor". . . or 'cautio[n]' . . . is appropriate" in this context, "because employment discrimination claims center on the issue of an employer's intent," and explicit documentary evidence of such intent is rare. *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C. Cir.) (citations omitted), *reversed on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998). "Courts reviewing such motions must bear in mind that a factfinder could infer intentional discrimination even in the absence of crystal-clear documentary evidence filed at the summary judgment stage." *Id.*

### III. ANALYSIS

Mindful of these standards, I conclude that judgment as a matter of law is not appropriate at this juncture, because at least two material factual disputes preclude summary judgment.

The first genuine dispute of material fact is whether Tara Wasiak, a Caucasian woman who was the incoming Director of Storerooms and Material Logistics, was at least partially motivated by racial bias when the decision was made to hire Timothy St. John, a white male, rather than Mr. Allison, who is African-American. On this point, WMATA points to Mr. Allison's so-so performance during the first round of interviews, after which Vyron Johnson—an

3

African-American man who at the time served as the hiring manager, Mr. Allison's second-line supervisor, and the Director of Storerooms and Material Logistics—told Mr. Allison, "Jerry, that wasn't your best interview," and his poor performance in the second round, when he scored the lowest of three candidates. Mot. Summ. J. 7, WMATA's St. Mat. Facts. However, a reasonable jury could potentially find that Mr. Allison was better-qualified for the Warehouse Manager role that Mr. St. John: although Mr. St. John had extensive experience in logistics and a bachelor's degree, Mr. Allison had extensive experience in the specific field of warehouse management for transit authorities, and had even served as WMATA's acting Warehouse Manager. Mot. Summ. J. ECF # 20-27, 20-28. Even more importantly, I cannot say as a matter of law that a reasonable jury could not draw an inference of discrimination from the optics of the hiring process. After the two African-American members of the hiring panel (Mr. Johnson and Raphael "Ray" Alfred, an African-American man) prepared and signed Mr. Allison's selection letter, the panel's only white member did not sign the letter and thereby select Mr. Allison, then the highest-scoring interviewee. Instead, Ms. Wasiak waited until Mr. Johnson retired, whereupon she became the hiring manager, and opened the interview process to outside candidates. After interviewing these candidates with a two-member panel—in violation of a WMATA policy requiring consistent panels, Opp. Ex. J—Ms. Wasiak ultimately selected Mr. St. John. Although Ms. Wasiak has a track record of hiring minority candidates, a reasonable jury could draw an adverse inference from the fact that Ms. Wasiak denies knowledge of the selection memo that both Mr. Johnson and Mr. Alfred remember, *compare* Opp. Ex. G 48:09–11 *with* Opp. Ex. E 34:19–35:05 and Opp. Ex. R at 24:10–13, and from the fact that another WMATA employee has filed race, religion, age, and national origin discrimination claims against Ms. Wasiak. Mot. for Leave to

File, Exs. AB, AC.[1] In sum, WMATA has not shown that it is entitled to judgment as a matter of law on this issue.

The second genuine dispute of material fact is whether WMATA's actions in assigning Mr. Allison the Midlife Overhaul Program, giving him negative performance reviews, placing him in a Performance Improvement Plan (PIP), and ultimately terminating him were motivated by a desire to retaliate for his discrimination claims. "To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (citations omitted). A factfinder could easily find that these were innocent decisions, reasoning that the Midlife Overhaul Program was a reasonable assignment, and that Mr. Allison was terminated for poor job performance. But I cannot say that a reasonable jury could not also conclude that Mr. St. John (and Ms. Wasiak) were already aware of Mr. Allison's allegations, and they retaliated by building a case against Mr. Allison that would provide cover for firing him. Before Mr. St. John became his supervisor, Mr. Allison had consistently received positive performance reviews. Opp. Ex. A. But after Mr. Allison filed race discrimination claims with both WMATA and the federal Equal Employment Opportunity Commission (EEOC)

---

[1] Upon consideration of Plaintiff's Motion for Leave to File a Supplement Brief in Opposition to Defendant's Motion for Summary Judgment, and For Sanctions, the motion is GRANTED in part and DENIED in part. I GRANT Plaintiff leave to file its supplemental brief, and will consider the arguments made therein. Plaintiff's request for sanctions is DENIED, without prejudice to him re-raising the issue through a motion in limine at the appropriate time.

Accordingly, the record consists of the docket, the Second Amended Complaint, WMATA's Answer thereto, WMATA's Motion for Summary Judgement and Statement of Material Facts Not in Dispute, Plaintiff's Opposition and Statement of Material Facts in Dispute, WMATA's Reply, Plaintiff's Motion for Leave to File a Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment and For Sanctions, the memorandum in support thereof, the Supplemental Brief itself, WMATA's Opposition to that motion, Plaintiff's Reply, and the exhibits attached to all of the above-mentioned filings.

in November 2014, Mr. St. John assigned Mr. Allison to manage the Midlife Overhaul Program in February 2015, Mr. Allison began receiving consistently poor performance reviews, and he was eventually terminated in June 2016. Mot. Summ. J. Exs. 15, 18, 20-22.

In particular, it is unclear at this stage whether Mr. St. John and/or Ms. Wasiak were aware of Mr. Allison's pending EEO complaints at the time of the assignment of the Midlife Overhaul Program. Mr. Allison testified that when he spoke with Mr. St. John about the EEOC complaint, Mr. St. John said that "he was already aware," Opp. Ex. B at 130:15-131:9, and that the only justification Mr. St. John gave for the assignment at the time, was that "Tara [Wasiak] supports me giving this to you." *Id.* at 129:18-21. Although significant evidence supports a non-discriminatory interpretation of Mr. Allison's treatment, "a factfinder could infer intentional discrimination" on the evidence presented. *See Aka*, 116 F.3d at 879.

## IV. CONCLUSION

For these reasons, WMATA's Motion for Summary Judgment is hereby **DENIED.**

**SO ORDERED.**

Dated: January 19, 2018

TREVOR N. MCFADDEN
United States District Judge